The second issue is that appellants Brickhouse Cafe & Lounge, Brickhouse Restaurant & Bar did not infringe on the mark of appellee Brickhouse Tavern & Tap or Brickhouse Subs because the parent company BHTT does not have the exclusive right to use the wordmark Brickhouse. Rather, they have the exclusive right to use the entire wordmark, Brickhouse Tavern & Tap, Brickhouse Subs. Let me ask you this. You have this issue about it being void and your opposing counsel has argued that you have to file a Rule 60b-4 motion to raise that. And we seem to have different circuits coming out different ways and we only have an unpublished opinion so we don't have clear binding precedent in our court. Why shouldn't we adopt the principle that the trial court is the best place to resolve factual disputes like what really happened on this service and who was served and what happened and was this really compliance? Isn't that the better place to resolve that rather than an appellate court? Ordinarily it would be, Your Honor. However, that fundamental principle applies when there has actually been a trial on the merits. In this case, we're dealing with a default judgment where the defendant in our position was never served properly, did not appear, did not make any arguments, did not present any facts. No, and I understand that, but you are challenging the defectiveness of the service of process. And so any factual findings in regard to that should be made in the trial court, right? So isn't that why the rule that I think it's the Ninth Circuit and someone else have adopted is you've got to file in, you've got to file a 60b-4 as a predicate to an appeal. I understand there wasn't a trial on the merits, but there wasn't a trial on the merits in the last case with summary judgment. The 12b-6 case is a dismissal. I mean, there's a lot of times there's not a trial on the merits and there's still an appeal and we still say you needed to raise it in the trial court. So what about here? Why not a Rule 60b-4? Well, I'm glad you asked, Your Honor, because this court, the Fifth Circuit, in Harper-McLeod Solicitors v. Keating v. Keating, clearly established and articulated why it is not necessary for the appellate court or a reviewing court to rest on the finding of the district court. In the Harper case, the court specifically held that it is a fundamental principle of the federal courts that have long allowed parties in federal lawsuits to rely on the power of district courts to set aside the judgment of another district court specifically when the judgment has been attacked on jurisdictional grounds as in the case reported today. There's another fundamental principle that is raised in the Harper case, and that is that federal courts have a disdain for default judgments, and rather, federal courts prefer to have a decision on the merits. The Harper case— This is the case that you cited in the 28-J? Yes, it is, Your Honor.  And a copy of that full case is attached to that. I know, I'm just trying to—I always like to put the cite in my notes so I can find it later, so that's why I'm looking for it. I'm sorry, go ahead. No problem at all, Your Honor. Thank you. The Fifth Circuit has clearly established that Texas law, rather than federal law, governs whether service of process on the defendant is sufficient to confer personal jurisdiction to a court in order to render a default judgment. In the Harper case, the court unequivocally recognized that Texas courts have consistently required strict compliance with regard to service of process necessary to render a default judgment. This court— If we don't agree that the affidavit you're citing to shows that three different addresses were served at the same time, because I do think that's a misreading of the affidavit. So assume, arguendo, we don't agree with that. What other defects would you say render this inconsistent with Judge Fitzwater's order? The other defect is that Texas courts have required—and again, this is federal courts following Texas law with regard to service of process. Texas courts have clearly held that when you serve a corporation, a corporation is not a person capable of accepting service themselves. They can only be served by someone who is authorized by the corporation to accept service. If a party cannot find or locate a person authorized to accept service on behalf of the corporation, Texas Rule 107, Rule of Civil Procedure 107, gives that party the ability to serve the Secretary of State as the registered agent for that corporation. And that did not happen in this case. Yeah, but that rule in the Business Organization Code says that doesn't prevent any other method. And this thing about leaving it with somebody who's over 16 in the place specified is—I mean, I can't tell you how many I've seen of those that get served that way. So that's a way to do it under Texas law. Well— Are you saying there's case law that says you cannot do that? Yes, I am. Okay, and tell me what that case is. That case law is Graham Rutledge v. Bailey Furniture, and the 5th District Court of Dallas, Texas, declared that a Rule 106 motion for substituted service cannot be used to circumvent the legal requirement that an authorized person be served on behalf of the corporation. In that case, the very fact was that the process server left the citation on the door of a business and had received an order allowing him to serve anyone over the age of 16 or to leave the citation on the door of the business. And that's what he did. The 5th District Court ruled that that service was defective because we were dealing with a corporation and we were looking at a default judgment, which required strict compliance with the service requirements. Was there any discussion in that case about whether it would have been different if, instead of leaving it on the doorstep, it had been given to a person over 16? No, because it was, in fact, left on the doorstep. But there is case law that says, in fact, the Supreme Court in Uvalde v. Martin Lennon, another case which I included in my 20J letter, stated that when serving a corporation, the citation must show that the person served had the authority to accept service on behalf of the corporation. And when we look at the affidavits in this case, those affidavits are clearly defective in that respect. And again... That Bailey's Furniture case, is that a published case? Because I know she cited just the case number. There's no reporter listed. At the time, I don't know that it was published at the time of writing this brief. It's a 2012 case. Are we talking about Bailey's Furniture v. Graham Rutledge? Is that the case you're talking about? Yes, that is the case I'm referring to. That suggests to me it's an unpublished case which is not precedential in Texas. They have memorandum opinions in Texas which are not precedential, unless they've changed the rules. No, Your Honor. But that's my memory from the old days. Your Honor, at this point, I don't know it. Well, we'll look at the case. I appreciate that. Even without the Graham Rutledge beta case, we still can rely on the Texas Supreme Court case of Uvalde v. Martin, which again states that the return of service must show that the party served had the authority to accept service on behalf of the corporation. And this is even when the judge has ordered that kind of service? In the Uvalde case, the court does not discuss whether service – I don't believe that the service was by Rule 106 in that case or substituted service in that case. However, in the Harper case, which I cited, service was performed by substituted service. And in the Harper case, the reason that the court found that the citation did not meet the strict compliance requirements was because that the citation was served on – was served at the wrong address when it was served upon the Secretary of Court. The court even acknowledged that the defendant in that case actually received service. But under Texas law, even actual notice of the lawsuit does not confer jurisdiction if service has been improper. Oh, I agree with that. So based on that, Your Honor, the – and again, restating that the Texas law – But you're saying that we should clarify or announce that Texas law is such that even where a judge orders a particular form of service, and let's assume arguendo that the judge's order was followed meticulously – I know you don't agree with that, but let's assume that arguendo – That's your – that's the Bright Line Rule. The Bright Line Rule is a slightly more specific, Your Honor. Okay. The more specific rule is that in order for a court to have the jurisdiction necessary to render a default judgment, the service must be – the affidavit of service on its face must show that it was served on someone with the authority to accept service on behalf of that corporation. And we lack that in these affidavits. On their face, the affidavits of service are defective, and collectively, as a matter of law, two of them are false, and the third affidavit is effectively rendered false because it's impossible to – That's the address thing, which – Yes. I don't agree with your construction of the affidavit, but I understand your argument. Okay. And, you know, for argument's sake, I would just say that if you read each of the affidavits and they state that I, the process server, on March 12th of 2016 at 1.35 p.m. served the defendant and the address listed is a different address on each of the affidavits, it is physically impossible that the process server could have been in three different locations at the same time. Now, in the court, in the Uvalde case, the Supreme Court specifically says that there is no presumption in favor of valid service when attempting to render a default judgment. So we cannot presume or we cannot infer what the process server meant on these affidavits. They must strictly comply with the requirements and must, on their face, clearly identify the time, the location, and the authority of the person that was served with the citation. These affidavits fail in those respects. With regard to the second issue, Brickhouse Café and Lounge and Brickhouse Restaurant and Bar did not infringe on the trademark or wordmark of Pele's Brickhouse Café. Since you've been hit with a lot of questions and we don't have much time left, so we'll give you two additional minutes. Thank you, Your Honor, I appreciate it. Brickhouse Café and Lounge and Brickhouse Restaurant and Bar did not infringe on the trademark or wordmark of Pele's Brickhouse Café and Lounge or Brickhouse Subs because the certificates of registration give BHTT the exclusive right to the use of the entire wordmarks. Brickhouse Tavern and Tap and Brickhouse Sub not the exclusive use of the word Brickhouse. Brickhouse is a generic word that could not, that no one individual could claim ownership of the word Brickhouse. The court, this court, has established that the test for infringement is whether the use of the allegedly infringed mark is likely to confuse consumers as to the source of the product. So tell us why this is not confusing in your view. If I would, I'd like the court, if the court would look at the logo of Brickhouse Tavern and Tap, which is located on the record, my record excerpt tab number three, page four, which is part of the default order, the logos for Brickhouse Tavern and Tap and the logos for Brickhouse Café and Lounge and Restaurant and Bar are completely different. One is just a square with the words Brickhouse Tavern and Tap. The one for my client is an oval shaped or arched logo with fire coming out of the top of it and a B in cursive. No way that those two logos could be confused. Furthermore, in Plaintiff's amended petition, or amended complaint, they state that Brickhouse Tavern and Tap was designed as a gastropub. It serves over 80 different kinds of beers, different types of cocktails, cocktail beers. I've never heard of a cocktail beer. But my client, Brickhouse Café and Lounge, is a dance club. There's a dance floor. There's a place for musicians. It caters to a completely different crowd. The appellees mentioned in their complaint that Brickhouse Café and Lounge caters and advertises that it caters to the grown and sexy crowd. That refers to African Americans over the age of 35 who don't want to go to a club or party with teenagers and young kids. They do not advertise themselves as a gastropub or somewhere where they just go eat and drink craft beer. Two completely separate clienteles. Geographically, they are not close as well. They're at least 15 miles apart from where Brickhouse Tavern and Tap is and the closest Brickhouse Café and Lounge. The other one is located in the southern sector of Dallas, which is predominantly African American. Again, there's no confusion between the consumers at Brickhouse Tavern and Tap and the consumers at Brickhouse Café and Lounge. There's absolutely no evidence in the record presented by appellees that even offer any evidence that there was any confusion by consumers. All they did was make a blanket statement that there could be some. There's no evidence whatsoever in the record to support a finding that there was infringement or that there was confusion by the consumers of these two parties. All right. Thank you, Mr. Carl. You've saved your full five minutes for rebuttal. Thank you. Mr. Sullivan. I am happy to see someone cares about someone over 35 being able to dance. I'm proud that I learned a new term for myself since I'm over 35 as well. May it please the court, James P. Sullivan, the plaintiff, B.H.T.T. in attainment. It's been almost a year since plaintiff won a default judgment to protect its trademarks. But the defendants continue to infringe those trademarks in violation of a default judgment. Well, we don't want to hear anything that's outside the record, so just talk to us about what's in the appellate record. Absolutely. The default judgment that was entered on April 22nd, it's now been almost a year, and the appellate record shows that there is an injunction in place here. And so the defendants should be following it, and they aren't. Well, again, we don't want to hear about what's happened since the judgment was in it. We look only to the record in this case. So don't try to poison the well by telling us what has happened since the final judgment. Absolutely. That will be fine. What we would like the court to talk about today is, of course, in the record on appeal, is the quickest and most correct way to dispose of this appeal because it has dragged on as long as it has. And the quickest way to do that and the correct way to do that is to dismiss the appeal for launch of jurisdiction because this court has issued its mandate. Well, I'll tell you there's a real practical problem with that as I see it. I'm not saying that's an invalid argument, but it's not uncommon for the clerk's office to enter a clerk's order dismissing for want of prosecution and to enter a clerk's order reinstating the case after somebody moves for it. And I don't think the mandate tends to be mentioned in either place. And so you basically said we should announce a rule that I don't believe we've heretofore announced that would invalidate a great many appellate decisions that were rendered after such a reinstatement without ever mentioning the mandate. So answer that concern. So I would disagree with the characterization that you haven't announced this rule. I think that you already have, and you've announced it in Fifth Circuit rules. So the Fifth Circuit rules, Rule 42.3.4, provides that when an appeal is dismissed for want of prosecution, the mandate issues forthwith. And the Supreme Court has made it clear in the Calderon case that we cite that recalling a mandate, although within this court's power, is an extraordinary event that needs to be used sparingly in cases of grave unforeseen contingencies. And this court has also said to the same effect in its Rule 41.2. Are those cases where the appellate process has gone to its full conclusion with a reasoned decision, or are those cases where the mandate issued after essentially a DWAP, a dismissal for want of prosecution? So I think Calderon was a habeas case that would be quite unlike this one. But by definition, Rule 42.3.4 is going to be dealing with cases that were dismissed for want of prosecution so that nothing really happened in this court. And so this court has said that the mandate will issue forthwith when an appeal is dismissed for want of prosecution. And that's what happened here because the defendants in this case missed not one but two briefing deadlines and then subsequently also delayed the reply brief. And that is all within, I think, the appellate record. And so the appeal – this court's rules told the clerk's office by direction of the court, issue the mandate, relinquish jurisdiction to the district court. But we've also told the clerk that the clerk has the authority to reinstate the appeal. And so what I'm saying is – and I think you've pointed out – actually, to be honest with you, I'm going to look into addressing our local rules to make this more clear. But we are where we are. I know that I've worked on appeals that the clerk had dismissed and then reinstated. And so are you saying that that work was done in the absence of jurisdiction? I think that it probably was, Your Honor. And I think that you're referring to Fifth Circuit Rule 27.1.6, which talks about – so basically Rule 27.1 and 27.2 talk about which motions can be decided by the clerk and which motions can be decided by a single circuit judge with an Article III commission. And 27.1.6 says that the clerk can rule on a motion to reinstate appeals dismissed by the clerk. We think that that deals with a very specific subset of dismissals in which the mandate has not issued. That would be the dismissals under Rule 42.4, which is a dismissal without prejudice. So typically what happens, you'll see in Rule 27.1.3 the clerk has the authority to rule on a stay motion. So if the parties come to you and say, we don't need to move forward with this right now, we're trying to mediate it or something like that, then the clerk can say for – basically for recordkeeping purposes, this case is dismissed without prejudice and then any party can move to reopen the case. That's what the clerk has the authority to do. What the clerk – we don't think under the current – this Court's existing rules has the authority to do is to take the jurisdictionally significant and extraordinary step of recalling a mandate. And if I could direct you to one other part of Rule 27, this Court's Rule 27. Rule 27 – let's see. Rule 27.1.5 gives the clerk the authority to stay issuance of a mandate pending a certiorari petition, but it doesn't give them the authority to recall a mandate in that circumstance. Rule 27.2.7 gives that authority to a circuit judge with an Article III commission. And so Judge Haynes, I would welcome your careful attention to this problem and to fixing the rules. One thing that might help would be if this Court had an advisory committee on procedures, which is actually – Congress has said you shall have one, but to my knowledge, it doesn't actually exist. Well, we actually have a rule proctor who looks at these things. Okay. Okay. Well, I'll be grateful for you to look into the rule proctor, but I think in this case I think you should dismiss the want of jurisdiction, even if mistakes have been made in the past, because the mandate is a jurisdictionally significant document. And that's not something – that's not a ministerial function. It's not something that should be bureaucratized, which is not to slight our friends in the clerk's office. But that's the kind of decision, and we think this – a published opinion in this case would clarify proceedings for the bar and internally that when the mandate has not been recalled, then jurisdiction is lacking and mandates can't be recalled by anybody who doesn't have an Article III commission. And not only has the mandate not been recalled in this case, we don't read – there's the clerk's memorandum of October 24th that just says case reopened. We don't read that memorandum as recalling the mandate. And if it did say that, I think it would be ultra-verious outside the clerk's authority. But we have the power to do that, so we could do that. You absolutely do. We could say that the manifest injustice would be this case is preceded all the way to oral argument without anybody really noticing this. And so to the extent necessary, we hereby recall the mandate. We could do that, and that would move the question. You could, but I'd like to tell you why you shouldn't. We think that far from preventing injustice, recalling the mandate in this case would cause injustice. Recall that the plaintiff's – or rather the district court's default judgment says that irreparable injury is being caused not only to the plaintiff here but also to the public that is being deceived by the confusingly similar marks. So we think that recalling the mandate after there have been all of these string along tactics – and I won't go into any post-record statements from the district court about that – but to reward those tactics in this case where there have been repeated deadlines missed. Well, I mean your counsel obviously thinks the judgment is void and therefore that what they're doing is not a tactic. They're simply not paying attention to a void judgment. I'm not agreeing or disagreeing with him, but that's his position, and his position is if you ever gave me a shot at the merits on this case, I would be able to show the marks are dissimilar, the clientele, all this. I learned a lot about gastropubs and dance clubs for those of us people over 35, etc. So I think that first of all, whether my friend in opposition wants to adhere to the default judgment, first of all, he is bound to do that, and his clients are bound to do that. They sought a stay of that, and this court – and I think, again, this is in your record – this court denied that stay motion. So it is an effective default judgment, and it isn't being followed. And separate and apart from the default judgment, I think that this court's briefing orders should be followed, and they haven't been in this case. They've been repeatedly ignored. Our briefing? Yes. But you didn't move to reconsider yourself when the – so rightly or wrongly, the clerk's office reinstates the appeal. You didn't seek a single judge or three-judge panel. We can review clerk orders, even if the clerk has the authority to enter an order. We always can review that. Sure. And people ask us to. Sure. With some frequency, not a great deal, but some frequency. You didn't do that. So now we've got the clerk's order for better for worse that gave him the benefit of these various excuses that you say are not valid. The reason that we didn't move for reconsideration is that we don't think that the clerk purported to recall the mandate. So we didn't disagree with what the clerk did with respect to any kind of record-keeping reopening purposes, but that is separate and apart from the mandate. We don't believe – we would have been filing a motion for reconsideration saying we think that the clerk got this right by not recalling the mandate and, therefore, this court lacks jurisdiction. And so then what would we be asking to reconsider if there really wouldn't be anything? We also, of course – Well, isn't it a contradiction to have a live case in the court of appeals where the mandate hasn't been recalled? I mean, I don't understand. I think that it is, and I think you should dismiss it for want of jurisdiction, yes. And I suppose the – Well, but as Judge Haynes just pointed out, I mean, it was reopened without any challenge to that order of reopening. Right, because we didn't read that memorandum from the clerk as recalling the mandate. So we thought that – So what did you read it as? It was something. It had some kind of effect. I think that the effect that it probably was intended to have was that my friend in opposition was trying to file things electronically, and they were getting bounced because the case was closed. And so they reopened them so that they could file things. So we think that it had that effect, and we don't have a problem with the ECF system accepting their filings. But what we do have a problem with is this court exercising jurisdiction that doesn't actually have because it has entered its mandate. The other thing that I would add is that while we could have filed a separate motion to dismiss a warrant of jurisdiction immediately at that time, typically, at least in my experience in this court, when I have filed those motions to dismiss, they end up being carried with the merits briefing, and then you get them in oral argument or on the summary calendar. Right, but then we would have the ability to have undone the briefing orders. I mean, we could have said, no – I mean, regardless of the whole mandate point, we could have just said, you messed this up too many times. The clerk was wrong to be so gracious with you and undone that. Right. Well, and we would have liked that because it would have saved us a lot of money. I'm sure, and that's why I'm wondering why you didn't challenge it. Well, this is why, because it could have ended up costing us more money. So if we filed a separate motion to dismiss a warrant of jurisdiction and then this court did what I think is the ordinary practice, which was to carry the motion to dismiss with the merits, then we would have still been writing merits briefing, and now we've hit you with two pieces of paper and sent our client to bill for two pieces of paper instead of one. So we were aware – when the clerk's memorandum came down, we were frankly kind of surprised and not entirely sure what was supposed to be accomplished by that. But one thing that we didn't read it as doing was recalling the mandate. Why don't you move on then, assuming that we have appellate jurisdiction to deal with the service of process issues first and then any others that you have. Sure. So if this court is prepared to recall its mandate, we think that you should affirm the judgment for two reasons. The first is the reason that Judge Haynes mentioned. We think that this court should join the Ninth and Eleventh Circuits, both of whom have held that a Rule 60b-4 motion needs to be filed in a case like this so that the district judge here, Judge Fitzwater, has an opportunity to make a record, exercise discretion, and to give us as the winning party on the default judgment an opportunity to fix any perceived errors in the proof of service. Because I've seen cases where they actually get a deposition from the process server and all of that is put on and rules are made. Absolutely. Exactly. I'm saying in the state court. I'm sorry. I haven't seen that in this court. I think that it could have happened here if my friend in opposition had filed a Rule 60b-4 motion. I would say just a few things about last night's midnight Rule 28J letter where both of the, I think, key cases that we talked about today, Harper and…  Ivalde. So first of all, the newest of those cases was from 2001. So we think that it's improper to spring those basically for the first time at oral argument. But in any event, if you want to consider them, we think that the first of those cases, the Harper case, actually proves our point. Harper was a case in which somebody did file a Rule 60b-4 motion. Similarly, my friend in opposition on page four of their reply brief cited the Lido cabinetry case for this idea that you would somehow be able to overturn a default judgment on service of process grounds. But in Lido cabinetry as well, the losing party filed a Rule 60b-4 motion in the district court. And this court was reviewing the denial of that Rule 60b-4 motion. So we think all of the cases, the ones that were timely cited in their briefs, the ones that have been dropped on us at the eleventh hour, those things actually prove our point. And it really should happen this way. So would the way to phrase this rule that you're articulating be putting aside the – let's say the mandate issue never happened, that we never had any briefing issues, and this was just a regular appeal, regular briefing, and here we are. The rule that you would announce is we have jurisdiction because under 1291 it's a final judgment appeal. We have jurisdiction. However, there's no record for us to overturn what the district court did because of the absence of the 60b-4. Or is it your position that the absence of the 60b-4 deprives us of jurisdiction? So there are no jurisdictional consequences. This is not the U.S. Supreme Court reviewing a state court judgment. Their forfeiture under 1257 would have jurisdictional consequences. Here, the rule that we're asking you for, we could have made our brief twice as long if we had cited every case in which this court said that it will not consider arguments raised for the first time on appeal. This service of process argument is, of course, an argument being raised for the first time on appeal. The only thing that the defendant's side filed in the district court in this record on appeal was a notice of appeal. So they had an opportunity to present their service of process argument to the district court, and they didn't do so. What about the argument? His argument is the face of the service, the face of the return of service proves his case because he has this argument about the three addresses, which, again, I don't read the affidavits that way. But that's an argument that he's making, and if you read it that way, then the face of the service would show an impossibility that three different addresses were served at exactly the same time. So, first of all, to the extent the district court got to pass on the affidavit, at page 428 of the record on appeal, the district court found, as a matter of fact, in the default judgment that the defendants were, quote, duly served in accordance with the court's order granting substituted service. So we don't think that there is anything on the face of it because if there were, we don't think that the district court would have so found in the default judgment. In any event, if there's something on the face of the affidavit that they have a problem with, Federal Rule of Civil Procedure 4L3, and to correct my friend in opposition, federal law does govern the service of process issue here under Hammond against Plumer. I don't think that there's any question about that. Rule 4L3 says that failure to prove service does not affect the validity of service. The court may permit proof of service to be amended. And so if my friend in opposition had filed this Rule 60b-4 motion that he should have, then we would have had an opportunity to present our argument that the affidavit was perfectly fine, and you can find the affidavit beginning at page 298 of the record on appeal. We think that the affidavit is perfectly fine. It says that at 335 p.m. on March 12th, 2016, our process server, quote, substitute served per order signed by judge, end quote. So we know what address he went to. He went to 2525 East Arkansas Lane, the Arlington Restaurant's address. So if there was doubt about that, you're saying that could be supplemented in the Rule 60b-4 proceeding by the process server clearing that up. It's not a writ of error kind of circumstance like in state court where it's the face of the record has to substantiate it or not. That's how it works in state court is you could bring a – I think it's called a writ of error to the court of appeals without ever having said anything. In fact, you couldn't have said anything to the district court, and they look at the face of the record. If there's a slightest thing out of place like the junior in Uvalde, reverse. So I don't think that this court would be bound to take that approach because this court, if a Rule 60b-4 motion had been filed and denied, then they could have taken an appeal from that, and they didn't do that. But you're saying in the 60b-4 proceeding, the process server, if there is some confusion about the addresses, could have either testified or filed another affidavit or whatever to clarify what address he went to. We believe that that probably could have happened, but the other thing that this court has been deprived of because no 60b-4 motion was filed is Judge Fitzwater explaining at greater length why he found that we complied with the substituted service order. We pointed out the mattress giant case in our briefing. Judge Fitzwater is very careful, very precise when it comes to authorizing substituted service. So he had a case where the process server slipped it under the door instead of firmly affixing it to the door, and he said that's not going to work because that's not exactly what I told you to do. Here, we did exactly what he told us to do. What's your answer to this case from the Dallas Court of Appeals that we discussed, the Graham Rutledge case? What's your answer to that case that he says stands for the proposition that you can't do this 106 with a corporation? So I think that you've given a couple of the answers. First, it's unpublished, and so it's not binding. Second of all, at least from what you can see in the briefs from the Bailey's case, and I think the Bailey's case is mentioned because Charles Bailey, the man behind the defendants here, also owns a furniture store called Bailey's Furniture. Oh, my. So that's how you— So he wants to get something out of his money in that case. Yeah, that's right. I think that's how you end up knowing about an unpublished decision that doesn't say anything about the issue that's presented here. I think that it's telling, although perhaps my friend in opposition will prove me a fool here, but they haven't cited any Texas rule of civil procedure that says that you can't use substituted service for a corporation. The question he raised was who is the authorized person to receive service process for these three defendants. The answer is Charles Bailey, and we got substituted service on him in accordance with Judge Fitzwater's order. And because we properly effected service process, if this court exercises a fellow jurisdiction, we respectfully request that you affirm the judgment. If I could, I'm sorry, just one housekeeping question. Yes, you may. And, Judge Smith, I won't ask it if you'd prefer that I not, because this is after the record on appeal is certified here. But in a subsequent order from the district court, the district court granted us $113,000 in attorney's fees for our district court proceedings but invited us to file a separate motion for attorney's fees for the appellate proceedings. And so the only housekeeping question is would the court prefer that we file that here or in the district court? Yeah, I mean, I guess we really shouldn't advise you on that. Thank you. I appreciate it. As you probably know, sometimes we decide appellate fees at this level, but my recollection is more often than not that would go back to the district court because it's more of a fact-finding procedure. I think that's right. This court's rules say that you can appoint a special master and that that special master can be the district judge in confirming those things. And my understanding of this court's Sims case from 1991 is that if we prevail and you affirm the judgment, then we would file a petition for a hearing within 14 days and ask that you include and award attorney's fees. And so that's the only reason I ask about housekeeping is I don't want to prolong these proceedings, and I also don't want to create extra paper that you don't want to see. We don't want to be saying anything here that seems like we're advising you as to what strategy you ought to use. Thank you for your time, and I'm sorry to have used it so much. Thank you, Mr. Sullivan. Mr. Caldwell, you've saved some time for rebuttal. Thank you, Your Honor. Again, I would like to reiterate the court's – the Fifth Circuit's finding in the Harvard case where it established and articulated the principle that federal courts have long allowed parties to federal lawsuits to rely on the power of district courts to set aside the judgment of another district court, specifically when the judgment has been taken. Okay, but that has to do with whether District Court A could entertain a Rule 60b-4 motion filed on District Court B's judgment. It's not about appeals and whether we should consider a record you didn't develop because you didn't file a 60b-4. And one of the issues, Your Honor, and I don't know if the court – well, I don't know the answer to this offhand, but in state court, if you make an appearance to attack service, you've effectively made an appearance, and you are then required to respond to that particular case. You waive – you, in essence, only give yourself additional time, but you waive your right to object to defective service. I know what rule you're talking about. That's – I mean, that's not the rule here. Okay. So – I mean, 60b-4, you're filing saying it's a void judgment, and then the court can suborn it. But I don't believe that there's any authority that precludes a litigant from filing an appeal without filing a Rule 60b when you're attacking jurisdiction. Well, Mr. Sullivan is saying you – we have – putting aside the whole mandate issue, we have jurisdiction over such an appeal. However, there's no record for us to look at to decide, and therefore, you essentially lose the appeal. So we have jurisdiction, but you lose the appeal on the merits for failure to file. That's the rule he thinks is what the 9th and 11th have said, and he thinks we should adopt in a published opinion because the only precedent we have is unpublished. Well, I think that if the court follows that line of reasoning, we get into a circular argument where you have litigants who feel that they weren't properly served. They choose not to serve following established federal law, choose not to appeal or not to answer, and then file their notice of appeal. But you say that, well, there's no authority that says that a litigant must file the Rule 60b before filing their notice of appeal, which is what my client did in this case. Well, you have to show up somewhere. I mean, you can't just sit at home forever or this judgment will follow you. So somewhere you have to show up and challenge the validity of the judgment, and you're saying you shouldn't have to do that in the trial court. And he's saying you should from a record-creating standpoint, not from a jurisdictional standpoint. I mean, that's just the argument being made. I'm not agreeing or disagreeing. And my position is that from the line of cases in federal court have established that the litigant has the right not to respond when the litigant believes that the service is defective. And that's what we did in this case. And it is also there is no case law that takes away a litigant's right to simply file a notice of appeal. There's no requirement. There's no legal requirement that I'm aware of that requires a litigant to file a Rule 60b motion before filing their notice of appeal, even if the issue is defective service and whether or not that court had personal jurisdiction over the litigant. I would also like to address, although the court, you know, asked counsel not to go into matters outside of the ruling. And we don't want you to do that either. Well, I only wanted to respond and say that the defendant is in compliance. He kept saying that the defendant was not in compliance. Okay, well, we're just not going to consider anything that's not in the record as of the date of final judgment. The district court gets to look at that. And I think Judge Haynes, you're absolutely right in that Rule 27.16.1.6 was specifically established to allow the clerks the ability to dismiss a case if timelines weren't followed and to reinstate a case if there's a reason to reinstate a case. Honestly, Mr. Sullivan's brought up an interesting point, and I personally am going to look into seeing if the rule can be clarified regardless of how this case comes out. Whether that happens or not is not in my control because there's, believe it or not, other people on the court who have opinions about things. And, you know, to add to that, you know, the rule, you know, clearly states Rule 27.1 states that, you know, when there is a question that that clerk's decision is reviewable by a judge. Yeah, I know that. I get a lot of those. And if you'd like to summarize, you can have 30 extra seconds. Thank you, Your Honor. But you don't have to. Okay. Your Honor, in my counsel stated that I did not cite Texas Rules of Civil Procedure, but I did cite Texas Rules of Civil Procedure 106 and 107 in my brief. And 107 requires service of a corporation that requires me to return a service stating specifically who was served with authority to accept service on behalf of the corporation. And with that, I close the motion. All right. Thank you, Mr. Caldwell. Your case, and all of today's cases...